```
                United States District Court
                 District of Massachusetts
```

|                                    |   |                    |
|------------------------------------|---|--------------------|
| **Kenneth Mazzone,**               | ) |                    |
|                                    | ) |                    |
|     Plaintiff, | ) |                    |
|                                    | ) |                    |
|     v.         | ) |                    |
|                                    | ) | Civil Action No.   |
| **Boston University and the**      | ) | 17-10284-NMG       |
| **Trustees of Boston University,** | ) |                    |
|                                    | ) |                    |
|     Defendants.| ) |                    |

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a slip and fall case arising out of a sporting event on the campus of Boston University in Boston, Massachusetts. The defendants have moved for partial summary judgment with respect to the application of a Massachusetts statute that imposes a cap on damages recoverable for torts committed by charitable organizations.

I. <u>Background</u>

In February, 2016, Kenneth Mazzone ("Mazzone" or "plaintiff") attended a lacrosse game between Providence College (on whose team his son played) and Boston University at Nickerson Field. As Mazzone was leaving the stadium, he slipped and fell on snow that was in the aisle of the bleachers. He was apparently severely injured.

Boston University ("the university" or "defendant") is responsible for maintaining Nickerson Field. The day before the subject lacrosse game, university staff performed snow-cleaning services in the grandstand area of Nickerson Field in response to a major snow storm. Plaintiff contends that the university's snow removal operation (the alleged cause of the tort) falls outside the scope of the university's charitable purpose and that while he did not pay for his ticket, Boston University received revenue from ticket sales for the game which rendered it primarily commercial. The university responds that it is a charitable organization under Massachusetts law and that the mission of its Athletic Department, including its Men's Lacrosse Program, aligns with the charitable purpose of the university.

Plaintiff has brought suit in federal court against Boston University and the Trustees of Boston University ("defendants"). Pending before this Court is defendants' motion for partial summary judgment.

## II. Legal Analysis

### A. Legal Standard

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as

to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Defendants' Motion for Partial Summary Judgment**

The Massachusetts legislature has enacted a cap on damages recoverable for torts committed in the course of activity that furthers the purpose of a charitable organization. M.G.L. c. 231

§ 85K. To qualify for the damages cap, a defendant must demonstrate that it is a charitable organization and that the tort complained of fell within the range of activities covered by the statute. Conners v. Ne. Hosp. Corp., 789 N.E.2d 129 (2003).

The parties concede that Boston University qualifies as a charitable organization but plaintiff disputes whether that status extends to the Athletic Department and, specifically, to the lacrosse team. This Court agrees with defendants that the charitable status of Boston University applies in equal measure to the Athletic Department and to its lacrosse team. Defendants have demonstrated that the university, consistent with its mission as a charitable organization, diligently endeavors to operate its school-sponsored sporting events as part of that mission. Snow removal at Nickerson Field allows the university to host outdoor athletic events for its athletes and their spectators (which include students, friends and families) during the wintertime. See Conners, 789 N.E.2d at 135 (holding that snow removal in a hospital's parking lot directly accomplished the subject charitable purpose). Moreover, Mazzone has not shown why his status as a spectator is distinguishable in this analysis. Simply because Mazzone was a spectator rather than a player in the lacrosse game does not alter the fact that the

sporting event was a component of the university's charitable purpose.

Mazzone submits that his payment for parking at Nickerson Field was unrelated to the university's charitable purpose. Massachusetts courts have held that if an organization's revenue-generating activity is "primarily commercial", it cannot "accomplish directly" its charitable work. Id. at 137. To be clear, a revenue-generating activity does not make the activity primarily commercial. Missett v. Cardinal Cushing High Sch., 680 N.E.2d 563, 567 (1997). It may still "accomplish directly" the organization's charitable purpose if the revenue-generating activity is in conformity with the charitable purpose. Conners, 789 N.E.2d at 137.

Mazzone's argument with respect to the parking fee is misplaced because there is no evidence that revenue generated from the parking lot or from the lacrosse game itself was "primarily commercial". Defendants have demonstrated that Boston University received revenue in conformity with its charitable purpose because 1) the university did not own or operate the lot where plaintiff paid for parking and 2) revenue expended on the maintenance of a charitable organization's facility falls within the charitable purpose of that organization. Mason v. S. New England Conference Ass'n of Seventh-Day Adventists of Town of S. Lancaster, Com. of

Massachusetts, 696 F.2d 135, 140-41 (1st Cir. 1982) (holding that building and maintaining the facility falls within the organization's charitable purpose); see also Enman v. Tr. of Boston Univ., 170 N.E. 43, 44 (1930) (finding that maintenance of a dormitory was held charitable even though the university's goal was to educate rather than to house students). Consequently, revenue received by the university as a result of the lacrosse game does not render the activity primarily commercial.

Accordingly, because defendants have demonstrated that Boston University, including its component Athletic Department, is a charitable organization and that the subject snow removal fell within the range of activities covered by the statute, their motion for partial summary judgment will be allowed.

### ORDER

For the foregoing reasons, defendants' motion for partial summary judgment (Docket No. 77) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated January 16, 2019